IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

ALVIN M. LINN, JR.,

    Plaintiff

v.                                        CIVIL NO. JKB-14-2159

TARGET CORPORATION,

    Defendant

\* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM

Plaintiff Alvin M. Linn, Jr. ("Plaintiff") brought this action against Defendant Target Corporation ("Defendant"), asserting a negligence claim arising from a slip-and-fall accident at Defendant's Hagerstown, Maryland, store. (ECF No. 2.) Now pending before the Court is Defendant's Motion for Summary Judgment, filed pursuant to Rule 56 of the Federal Rules of Civil Procedure. (ECF Nos. 38, 48.) The issues have been briefed (ECF Nos. 38–1, 43–1, 44 & 48–1), and no hearing is required, Local Rule 105.6 (D. Md. 2014). For the reasons explained below, Defendant's Motion for Summary Judgment will be DENIED.

## *I. Background[1]*

Plaintiff visited the Hagerstown, Maryland, Target store on January 5, 2014, arriving at some point between 11:45 a.m. and noon. (ECF Nos. 2 ¶ 3, 48–3 at 4.) It was a cold Sunday morning. (ECF No. 48–3 at 6.) According to Plaintiff, it had just started raining when he arrived at the store, although he did not notice any sleet at that time. (*Id.* at 4.)

---

[1] The facts and the inferences to be drawn therefrom are taken in the light most favorable to the party opposing summary judgment, in this case Plaintiff. *See Scott v. Harris*, 550 U.S. 372, 378 (2007); *Iko v. Shreve*, 535 F.3d 225, 230 (4th Cir. 2008).

Plaintiff completed his errand; surveillance footage shows him exiting the store at 12:14 p.m. (ECF No. 43–1 at 14.) Plaintiff took about three steps outside—and then he slipped and fell. (ECF No. 48–3 at 6.) In considerable pain, Plaintiff did not examine the condition of the ground around him. (*Id.* at 7.) However, witnesses reported that the sidewalk was icy and slippery as a result of "freezing rain." (ECF No. 43–5 at 3, 5-6.)

Matthew Greene, a senior Target protection specialist, was one of the first Target employees to respond to the incident. Greene had arrived at work at 10:00 a.m. (ECF No. 43–9 at 2.) At the time of his arrival, the weather outside was cold and dry. (*Id.*) Greene did not know the forecast for the day; he indicated that Target employees monitor weather conditions by "looking out the door," but he then remarked that there is "no one responsible for that." (*Id.* at 3.) Greene claimed to have stepped outside during a routine walk of the sales floor about twenty minutes before Plaintiff's fall: according to Greene, at that point it was "just cold," with "[n]o precipitation." (*Id.* at 3.) But by the time Greene arrived to assist Plaintiff, the sidewalk was slippery, and it had a visible "buildup of . . . ice." (*Id.* at 4.) Greene noted that the facilities manager, Mike Surrena, was not present that day;[2] that "[n]o one" takes his place when he is off duty; and that the front-end team would have been responsible for salting the front sidewalk in Surrena's absence. (*Id.* at 7.) Greene acknowledged that all Target employees are trained on matters of guest safety. (*Id.* at 9.)

Keith Cantlin, the senior front-end team leader, was also among the first responders to the incident. Cantlin had departed for lunch prior to Plaintiff's fall; at that point, the weather was cold and clear. (ECF No. 43–8 at 4.) According to Cantlin, Mike Surrena typically salts the front sidewalk in the event of inclement weather, but Cantlin could not recall whether Surrena

---

[2] Greene incorrectly believed that the incident occurred on a Saturday (ECF No. 43–9 at 7). In fact, the parties agree that the incident occurred on January 5, a Sunday. However, Greene's mistake is immaterial, as he noted that Surrena works weekdays only (*id.*).

2

was present that Sunday. (*Id.* at 3.)[3] Like Greene, Cantlin did not consider it his job to monitor the weather forecast: rather, he explained that Target employees respond to weather conditions after being notified by persons outside, including team members who step out to retrieve carts. (*Id.* at 7.)

Nathanial Robbins, an employee of MarketSource—an "in-store sales services partner" that operates Target Mobile kiosks (ECF No. 44–5 at 2)[4]—exited the store at 12:10 p.m., approximately four minutes before Plaintiff's fall (ECF No. 43–1 at 14). In a statement, Robbins reported that the sidewalk was "[I]cey" [*sic*] due to "freezing rain" at the time of his exit. (ECF No. 43–5 at 4.)[5]

The surveillance video shows the parking lot asphalt changing color as early as 11:51 a.m., signifying precipitation. (ECF No. 43–1 at 13.) At 11:55, a Target cart attendant appears on camera; he enters the building at 11:59. (*Id.*) At 12:07 p.m., a woman appears holding an umbrella; by 12:11, the camera shows streaks from rainwater or sleet. (*Id.* at 13-14.) Footage taken from a separate camera shows Plaintiff's fall at 12:14: while the image quality is imperfect, there is no doubt that the ground was slippery at that point. (ECF No. 48–8 (video file).)

Plaintiff filed suit in the Circuit Court for Washington County, Maryland, on May 27, 2014 (ECF No. 2–1 at 1), alleging that he sustained injuries attributable to Defendant's negligent

---

[3] For his part, Surrena claimed that, while he sometimes assists Target team members with salting the sidewalk, it is not his responsibility to do so. (ECF No. 44–6 at 4.)

[4] The parties sharply dispute whether Robbins should be considered an agent of Target for purposes of this litigation. On one hand, Robbins testified on deposition that he is compensated by MarketSource and reports to a MarketSource district supervisor. (ECF No. 43–7 at 2.) On the other hand, Robbins described his title as "Target Mobile wireless team lead" (*id.*); he indicated that he would address problems on site with managers of the Hagerstown store (*id.* at 3); he referred to other Target employees as part of his "team" (*id.* at 5); and he submitted a "Team Member Witness Statement" complete with his employee identification number (ECF No. 43–5 at 4).

    Mindful that the "existence of an agency relationship is a question of fact which must be submitted to the factfinder if any legally sufficient evidence tending to prove the agency is offered," *Faya v. Almaraz*, 620 A.2d 327, 339 (Md. 1993), the Court does not determine at the summary judgment stage whether Robbins should or should not be considered an agent of Target.

[5] In his deposition, however, Robbins wavered on this point—stating first that the sidewalk was *not* slippery when he exited the store (ECF No. 43–7 at 3), then backpedaling and suggesting that he could "not remember" whether the sidewalk was icy at that time (*id.* at 7).

3

maintenance of its premises and seeking $200,000 in damages (ECF No. 2 at 3). Defendant removed the action to this Court on July 3, 2014, pursuant to 28 U.S.C. §§ 1441 *et seq.* (ECF No. 1.) Defendant subsequently moved for summary judgment on May 1, 2015. (ECF No. 38.) Plaintiff responded on May 18, 2015 (ECF No. 43), and Defendant replied on June 4, 2015 (ECF No. 44).

On September 30, 2015, the Court alerted the parties to a discrepancy between the Memorandum of Law accompanying Defendant's electronically filed Motion to Dismiss (nine pages) and the hard-copy Memorandum that Defendant filed with the Clerk of the Court (fifteen pages). (ECF No. 45.) The Court directed Plaintiff to confirm whether he had received the complete fifteen-page version of Defendant's Memorandum. In a docketed correspondence, Attorney Bradley J. Reed, Counsel for Plaintiff, indicated that he was familiar with only the nine-page version of the Memorandum. (ECF No. 46.)

In view of this apparent error, the Court directed Defendant to refile its Motion to Dismiss along with the full and complete Memorandum of Law and all related Exhibits. (ECF No. 47 at 2.) The Court further provided that Plaintiff could, if he wished, file a supplemental response on or before October 19, 2015. (*Id.*) That deadline has since expired; having received no further communication from Counsel on either side, the Court deems Defendant's Motion ripe for decision.

## II. *Standard for Summary Judgment*

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing predecessor to current Rule 56(a)). No genuine issue of material fact exists if the opposing party fails to make a

sufficient showing on an essential element of her case as to which she would have the burden of proof. *Celotex Corp.*, 477 U.S. at 322-23. The "mere existence of a scintilla of evidence in support of the [opposing party's] position" is insufficient to defeat a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). The facts themselves, and the inferences to be drawn therefrom, must be viewed in the light most favorable to the party opposing summary judgment. *Scott v. Harris*, 550 U.S. 372, 378 (2007); *Iko v. Shreve*, 535 F.3d 225, 230 (4th Cir. 2008). Even so, the opponent may not rest upon the mere allegations or denials of her pleading but must instead, by affidavit or other evidentiary showing, set out specific facts showing a genuine dispute for trial. Fed. R. Civ. P. 56(c)(1). Supporting and opposing affidavits must be made on personal knowledge with such facts as would be admissible in evidence and must affirmatively show the competence of the affiant to testify to the matters stated therein. Fed. R. Civ. P. 56(c)(4).

## III. Analysis

### A. The Law of Premises Liability

In a premises liability case, as with any case sounding in negligence, the plaintiff must prove (1) that the defendant owed a duty to protect the plaintiff from injury, (2) that the defendant breached that duty, (3) that the plaintiff suffered damages, and (4) that the plaintiff's damages proximately resulted from the defendant's breach. *Hall v. Wash. Metro. Area Transit Auth.*, 679 F. Supp. 2d 629, 632 (D. Md. 2010) (citing *Remsburg v. Montgomery*, 831 A.2d 18, 26 (Md. 2003)). The duty owed by the owner/occupier of a premises is a "function of his legal relationship to the person entering on the premises." *Garner v. Supervalu, Inc.*, 396 F. App'x 27, 29 (4th Cir. 2010) (per curiam). While the owner/occupier owes lesser duties of care to trespassers and social guests, the "highest duty is owed to a business invitee": specifically, a

proprietor must "'protect the invitee from injury caused by an unreasonable risk' that the invitee would be unlikely to perceive in the exercise of ordinary care for his or her own safety, and about which the [proprietor] knows or could have discovered in the exercise of reasonable care." *Rybas v. Riverview Hotel Corp.*, 21 F. Supp. 3d 548, 561 (D. Md. 2014) (quoting *Casper v. Charles F. Smith & Son, Inc.*, 560 A.2d 1130, 1135 (Md. 1989)). In particular, the proprietor has a duty to "warn invitees of known hidden dangers, a duty to inspect, and a duty to take reasonable precautions against foreseeable dangers." *Tennant v. Shoppers Food Warehouse Md. Corp.*, 693 A.2d 370, 374 (Md. Ct. Spec. App. 1997).

While the duty owed to invitees is weighty, it is not limitless. "Storekeepers are not insurers of their customers' safety, and no presumption of negligence arises merely because an injury was sustained on a storekeeper's premises." *Giant Food, Inc. v. Mitchell*, 640 A.2d 1134, 1135 (Md. 1994). Rather, the "evidence must show not only that a dangerous condition existed, but also that the proprietor 'had actual or constructive knowledge of it, and that that knowledge was gained in sufficient time to give the [proprietor] the opportunity to remove [the hazard] or to warn the invitee.'" *Rehn v. Westfield Am.*, 837 A.2d 981, 984 (Md. Ct. Spec. App. 2003) (quoting *Keene v. Arlan's Dep't Store of Balt., Inc.*, 370 A.2d 124, 128 (Md. Ct. Spec. App. 1977)).

A proprietor has *actual* notice of a hazard when one or more of its agents is specifically aware of the danger. *See id.* at 985; *see also Konka v. Wal-Mart Stores, Inc.*, 133 F.3d 915, 1998 WL 24378, at *3 (4th Cir. 1998) (unpublished table decision). Conversely, a proprietor may be charged with *constructive* notice of a hazard when "it is shown that the conditions . . . existed for a time sufficient to permit [the proprietor, who is] under a duty to know of them, to discover them, had he exercised reasonable care." *Deering Woods Condo. Ass'n v. Spoon*, 833 A.2d 17,

6

24 (Md. 2003) (quoting *Moore v. Am. Stores Co.*, 182 A. 436, 440 (Md. 1936)). The factors that bear on constructive notice also yield insight as to the sufficiency of time to alleviate the danger: "What will amount to sufficient time depends upon the circumstances of the particular case, and involves consideration of the nature of the danger, the number of persons likely to be affected by it, the diligence required to discover or prevent it, opportunities and means of knowledge, the foresight which a person of ordinary care and prudence would be expected to exercise under the circumstances, and the foreseeable consequences of the conditions." *Id.* at 24-25 (quoting *Moore*, 182 A. at 440).

### B. *Plaintiff's Negligence Theory*

In support of its Motion for Summary Judgment, Defendant argues that Plaintiff has "failed to present any evidence . . . to establish [Defendant] was on notice of the hazard." (ECF No. 44 at 1.) On the contrary, Plaintiff has proffered facts and testimony from which a reasonable jury could find that (1) Defendant was at least constructively aware of the icy conditions of its sidewalk and (2) Defendant had an adequate opportunity to either remedy those conditions or warn its guests of the risk.

It is undisputed that the weather was cold on January 5, 2014, and video footage shows that precipitation began falling as early as 11:51 a.m.—twenty-three minutes before Plaintiff's incident. (ECF No. 43–1 at 13.) A cart attendant was out in the drizzle by 11:55 a.m., nineteen minutes before the incident. (*Id.*) Nathanial Robbins, who was at least Defendant's affiliate if not Defendant's agent,[6] reported that the sidewalk was "[I]cey" [*sic*] due to "freezing rain" four minutes before the incident. (ECF No. 43–5 at 4.) And Matthew Greene testified that he could see a "buildup of the ice" shortly after the incident. (ECF No. 43–9 at 4.) These facts, while far

---

[6] *See supra* note 4.

7

from decisive, are sufficient to create at least a jury question as to whether Defendant knew or reasonably should have known about the danger.

Defendant argues that even if it could be fairly charged with knowledge of the hazard, there is no proof that it acquired such knowledge *in time* to prevent Plaintiff's injury because neither Plaintiff nor any witness can specify exactly when the icy conditions formed. (ECF No. 48–1 at 11.) However, the cases on which Defendant relies actually illustrate the weakness of its position. For example, in *Rehn*, 837 A.2d at 983, a Chick-fil-A customer informed an employee that she had spilled her soda; the employee called for maintenance, and at *that very moment* the plaintiff (a third party) slipped on the wet floor. In *Zilichikhis v. Montgomery County*, 115 A.3d 685, 703 (Md. Ct. Spec. App. 2015), *cert. denied*, 120 A.3d 768 (Md. 2015) (unpublished table decision), the plaintiff slipped on a puddle of motor oil—but he admitted that there was "no way for [him] to know when that oil got there." And in *Maans v. Giant of Maryland, LLC*, 871 A.2d 627, 634 (Md. Ct. Spec. App. 2005), the plaintiff slipped on a puddle of water—yet for "all that was shown by [the plaintiff], the water could have been spilled by a customer seconds before [the plaintiff's] fall." In this case, by contrast, precipitation indisputably began falling well before Plaintiff's incident. A reasonable jury could find that Defendant's employees—purportedly trained on matters of guest safety and presumably familiar with Maryland's unpredictable winter weather—had notice and time enough to scatter some salt, set up an orange cone, or take similar preventive actions.

Defendant insists that time-on-the-floor evidence is "crucial under Maryland law" for purposes of recovery in a slip-and-fall case. (ECF No. 44 at 8.) In fact, however, Maryland courts have "downplayed the significance of time-on-the-floor evidence" in cases in which "defendants were aware of specific conditions, *influenced by weather*, that led to the emergence

8

of a particular hazard." *Rybas*, 21 F. Supp. 3d at 570 (emphasis added). For instance, in *Honolulu Ltd. v. Cain*, 224 A.2d 433, 437 (Md. 1966), although the glaze of ice on which the plaintiff slipped formed only fifteen or twenty minutes before her accident, there was sufficient evidence of the defendant's negligence to create a jury question: the defendant knew that water from melting snow tended to flow across its parking lot and that such water was apt to freeze on cold nights, and the "jury could have found that reasonable care demanded that the wet area be salted, as a precaution, before the ice had formed." *See also Bass v. Hardee's Food Sys., Inc.*, 229 F.3d 1141, at *4 & n.4 (4th Cir. 2000) (unpublished table opinion) (jury reasonably credited expert's opinion that restaurant should have recognized circumstances favoring ice formation in its parking lot; consequently, length of time that ice was *actually* on the ground was "immaterial" to plaintiff's claim). Likewise, a jury here could reasonably charge Defendant's employees with knowledge that precipitation on cold January days may create icy conditions warranting simple precautionary measures.

A reasonable jury could also find that Defendant's employees were uncertain about the extent of their responsibilities in case of inclement weather. For instance, Matthew Greene acknowledged that the front-end team was responsible for "tak[ing] care of" the front sidewalk and applying salt as needed (ECF No. 43–9 at 7), but Keith Cantlin—the front-end supervisor— testified that his team generally receives its weather information from cart attendants and others (presumably guests) who alert them to slippery conditions outside (ECF No. 43–8 at 7). And although Cantlin asserted that Mike Surrena usually handles salt application when he is on site (*id.* at 3), Surrena stressed that, while he would sometimes "jump in and assist the store team," it was "not [his] responsibility to do that." (ECF No. 44–6 at 4.) A jury could find that the lack of

9

clearly defined roles and protocols for weather-related exigencies exacerbated the risk of harm to Target's guests.[7]

While any speculation about the ultimate disposition of this suit would be premature at the summary judgment stage, Plaintiff has adduced more than a scintilla of evidence in support of his negligence theory. He is therefore entitled to try his case before a jury.

### C. *Defendant's Contributory Negligence Theory*

Arguing in the alternative, Defendant casts blame on Plaintiff for causing his own injury. Defendant contends that "countless patrons entered the store throughout the day, including just prior to the Plaintiff's fall, and did not slip or fall themselves." (ECF No. 48–1 at 13.) Consequently, Defendant surmises, "it is evident that Plaintiff failed to exercise ordinary care for his own safety and was, therefore, contributorily negligent in causing his injury, thereby preventing recovery." (*Id.* at 14.)[8]

Defendant's argument is not persuasive. The mere fact that other patrons did not slip on the icy sidewalk does not establish that Plaintiff's accident is attributable to his own negligence. Indeed, if that were the law, retail establishments, restaurants, and similar facilities could broadly avoid liability in slip-and-fall cases simply by nature of the high volume of human traffic that they attract.

---

[7] Defendant correctly observes that Maryland courts have declined to impose slip-and-fall liability on the *sole* basis of a proprietor's failure to regularly inspect and maintain its premises, *i.e.*, in cases in which the plaintiff can only speculate about the duration of a hazard. *See, e.g.*, *Maans v. Giant of Md., LLC*, 871 A.2d 627, 634 (Md. Ct. Spec. App. 2005) (assuming that defendant breached its duty to conduct reasonable inspections, that assumption did not aid plaintiff because plaintiff failed to adduce any evidence that defendant would have timely discovered water on the floor during the course of such an inspection).
    This case, however, is distinguishable from *Maans* and other cases of its ilk. Here, Plaintiff *has* proffered durational evidence, and his further showing of dubious prophylactic policies bolsters his negligence theory. After all, the law imposes on business invitors a duty to inspect their facilities and to take reasonable precautions against foreseeable dangers. *Tennant v. Shoppers Food Warehouse Md. Corp.*, 693 A.2d 370, 374 (Md. Ct. Spec. App. 1997).

[8] While many jurisdictions have adopted a comparative fault regime for negligence suits, Maryland retains the common law defense of contributory negligence as a complete bar to recovery. *See Coleman v. Soccer Ass'n of Columbia*, 69 A.3d 1149, 1158 (Md. 2013).

Rather, at the summary judgment stage, the "question of contributory negligence must be considered in the light of all the inferences favorable to the plaintiff's case that may be fairly deduced from the evidence." *Reiser v. Abramson*, 286 A.2d 91, 93 (Md. 1972). Where the evidence gives rise to more than one reasonable inference, "the question should be submitted to the jury." *Id.* And before the case may be withdrawn from the jury on contributory negligence grounds, "the evidence must show some prominent and decisive act which directly contributed to the accident and which was of such a character as to leave no room for difference of opinion thereon by reasonable minds." *Id.* Without any evidentiary showing of such a "prominent and decisive act" by Plaintiff on these facts, his case must proceed to trial.

## IV. Conclusion

For the foregoing reasons, an order shall enter DENYING AS MOOT Defendant's incomplete Motion for Summary Judgment (ECF No. 38) and DENYING Defendant's corrected Motion for Summary Judgment (ECF No. 48).

DATED this 29th day of October, 2015.

BY THE COURT:

/s/
James K. Bredar
United States District Judge